## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

BREEZE SMOKE, LLC,

      Plaintiff,

vs.

YATIN ENTERPRISES INC., *et al.*

      Defendants.

Case No. 2:22-cv-12803-PDB-CI

Hon. Paul D. Borman

Magistrate Judge Curtis Ivy, Jr.

## BREEZE SMOKE'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

For the reasons set forth in the accompanying memorandum in support, Plaintiff Breeze Smoke LLC ("Breeze Smoke") hereby moves this Court pursuant to Fed. R. Civ. P. 65(a)-(b) to preliminarily enjoin and temporarily restrain Defendants Yatin Enterprises Inc., Mini Market LLC, Drake Party Store LLC, Pennfield Party Store, Midtown Smoke Shop, Inc., SG, LLC, Wild Monkey Smoke Shop, and John Does 1-10 (collectively "Defendants") from using Breeze Smoke's valuable BREEZE trademarks. A Proposed Order granting this request for preliminary injunction is being submitted concurrently herewith.

Pursuant to Local Rule 7.1, through a series of cease and desist letters and/or phone calls, counsel for Breeze Smoke attempted to contact Defendants' counsel to request concurrence in the relief requested in this motion, and concurrence has not been reached.

Dated: November 22, 2022                   Respectfully submitted,

                                           By: /s/ *Mary A. Hyde*
                                           Jeffrey K. Lamb
                                           HONIGMAN LLP
                                           660 Woodward Ave., Suite 2290
                                           Detroit, MI 48226
                                           Telephone: (313) 465-7000
                                           jlamb@honigman.com

                                           Mary A. Hyde
                                           HONIGMAN LLP
                                           155 North Wacker Dr., Suite 3100
                                           Chicago, IL 60606
                                           Telephone: (312) 701-9360
                                           mhyde@honigman.com

                                           *Attorneys for Breeze Smoke LLC*

## **CERTIFICATE OF SERVICE**

I certify that on November 22, 2022 a copy of the foregoing was electronically filed with the Clerk of Court using the ECF system which will send notification to all counsel of record.  Further, a copy of the foregoing and all documents in support thereof was or shall be served upon each Defendant with the Complaint and Summons, as set forth in the Proofs of Service—Returned Executed to be filed in connection herewith.

*/s/ Mary A. Hyde*
*One of the Attorneys for Breeze Smoke LLC*

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

BREEZE SMOKE, LLC,

      Plaintiff,

vs.

YATIN ENTERPRISES INC., *et al.*

      Defendants.

Case No. 2:22-cv-12803-PDB-CI

Hon. Paul D. Borman

Magistrate Judge Curtis Ivy, Jr.

## MEMORANDUM IN SUPPORT OF BREEZE SMOKE'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

45942826.3

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................... i

TABLE OF AUTHORITIES .............................................................................................. ii

ISSUES PRESENTED........................................................................................................v

I.      INTRODUCTION .................................................................................................1

II.     STATEMENT OF FACTS .....................................................................................1

        A.      BREEZE SMOKE'S BREEZE MARKS................................................1

        B.      BREEZE SMOKE'S USE OF THE BREEZE MARKS. ......................3

        C.      DEFENDANTS' INFRINGING CONDUCT. ......................................4

III.    ARGUMENT ........................................................................................................6

        A.      LEGAL STANDARD.............................................................................6

        B.      BREEZE SMOKE WILL SUCCEED ON THE MERITS OF ITS
                TRADEMARK INFRINGEMENT CLAIMS. .......................................7

                1.      BREEZE SMOKE HAS VALID AND PROTECTABLE
                        TRADEMARK RIGHTS IN THE BREEZE MARKS. .............8

                2.      BREEZE SMOKE HAS SHOWN A LIKELIHOOD OF
                        CONFUSION AS TO THE ORIGIN OF THE BREEZE MARKS. .........11

        C.      BREEZE SMOKE WILL SUFFER IRREPARABLE INJURY IF A
                TEMPORARY RESTRAINING ORDER AND INJUNCTION ARE NOT
                ISSUED...................................................................................................17

        D.      THE BALANCE OF HARMS FAVORS A TRO AND INJUNCTION. ............18

        E.      THE PUBLIC INTEREST FAVORS A TRO AND INJUNCTION....................19

IV.     EXPEDITED DISCOVERY IS APPROPRIATE. ............................................20

V.      CONCLUSION....................................................................................................21

45942826.3

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

C<small>ASES</small>

*Am. Auto. Ass'n v. Dickerson*,
  995 F. Supp. 2d 753 (E.D. Mich. 2014)......................................................................19

*Arista Records, LLC v. Does 1–4*,
  2007 WL 4178641 (W.D. Mich. Nov. 20, 2007)......................................................20

*AWGI, LLC v. Atlas Trucking Co., LLC*,
  998 F.3d 258 (6th Cir. 2021) .....................................................................................13

*Bailey v. Chattem*,
  684 F.2d 386 (6th Cir. 1982) .....................................................................................19

*Black v. Cincinnati Fin. Corp.*,
  No. 1:11-cv-210, 2011 WL 1640962 (S.D. Ohio May 2, 2011)..................................6

*Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*,
  511 F.3d 535 (6th Cir. 2007) .................................................................................6, 18

*In re Eagle-Picher Indus., Inc.*,
  963 F.2d 855 (6th Cir. 1992) .......................................................................................6

*Frisch's Rest., Inc. v. Shoney's Inc.*,
  759 F.2d 1261 (6th Cir. 1985) ...................................................................................11

*Gen. Motors Corp. v. Keystone Auto. Indus., Inc.*,
  453 F.3d 351 (6th Cir. 2006) ..........................................................................11, 14, 16

*Homeowners Group, Inc. v. Home Marketing Specialists, Inc.*,
  931 F.2d 1100 (6th Cir. 1991) .......................................................................11, 12, 14

*Induct-O-Matic Corp. v. Inductotherm Corp.*,
  747 F2d. 358 (6th Cir. 1984) ......................................................................................10

*Innovation Ventures, LLC v. N.V.E., Inc.*,
  694 F.3d 723 (6th Cir. 2012) ............................................................................8, 13, 14

*Inwood Labs., Inc. v. Ives Labs, Inc.*,
  456 U.S. 844 (1982)....................................................................................................10

*Little Caesar Enterprises, Inc. v. Miramar Quick Serv. Rest. Corp.*,
  2019 WL 3219844 (E.D. Mich. July 16, 2019), *aff'd*, 2020 WL 4516289 (6th
  Cir. June 25, 2020).......................................................................................................7

ii

45942826.3

*Lorillard Tobacco Co. v. Van Dyke Liquor Mkt., Inc.*,
    471 F. Supp. 2d 822 (E.D. Mich. 2007)..............................................................11, 12, 15, 17

*Lucky's Detroit, LLC, v. Double L, Inc.*,
    522 Fed. App'x. 553 (6th Cir. 2013) ..................................................................................18

*Maker's Mark Distillery, Inc. v. Diageo North America, Inc*,
    679 F.3d 410 (6th Cir. 2012) ............................................................................................12

*Matal v. Tam*,
    137 S. Ct. 1744 (2017)........................................................................................................7

*N. Atl. Operating Co., Inc. v. JingJing Huang*,
    194 F. Supp. 3d 634 (E.D. Mich. 2016).............................................................................20

*Nedschroef Detroit Corp. v. Bemas Enter. LLC*,
    106 F. Supp. 3d 874 (E.D. Mich. 2015).............................................................................19

*Progressive Distribution Services, Inc. v. United Parcel Service, Inc.*,
    856 F.3d 416 (6th Cir. 2017) ............................................................................................15

*R.L. Polk & Co. v. INFOUSA, Inc.*,
    230 F. Supp. 2d 780 (E.D. Mich. 2002)..............................................................11, 17, 18, 19

*Ready for the World Inc. v. Riley*,
    No. 19-10062, 2019 WL 498813 (E.D. Mich. Feb. 8, 2019)...................................................18

*Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*,
    119 F.3d 393 (6th Cir. 1997) ..............................................................................................7

*Tumblebus, Inc. v. Cranmer*,
    399 F.3d 754 (6th Cir. 2005) ........................................................................................7, 8, 9

*Two Pesos, Inc. v. Taco Cabana, Inc*.,
    505 U.S. 763 (1992)............................................................................................................8

*Victory Lane Quick Oil Change, Inc. v. Darwich*,
    799 F. Supp. 2d 730 (E.D. Mich. 2011).............................................................6, 15, 17, 19

*Wynn Oil Co. v. Am. Way Serv. Corp*.,
    943 F.2d 595 (6th Cir. 1991) ..................................................................................11, 13, 15

*Wynn Oil Co. v. Thomas*,
    839 F.2d 1183 (6th Cir. 1988) ..........................................................................................13

### STATUTES

15 U.S.C. §1052(f)...............................................................................................................9

15 U.S.C. §1125....................................................................................................................7

15 U.S.C. § 1114............................................................................................................7

15 U.S.C. § 1115............................................................................................................8

15 U.S.C. § 1116............................................................................................................17

**MISCELLANEOUS**

Fed. R. Civ. P. 26...........................................................................................................20

Rule 26.........................................................................................................................20

45942826.3

## <u>ISSUES PRESENTED</u>

1.  Whether Defendants should be temporarily restrained and preliminarily enjoined from selling unauthorized disposable vape e-cigarette products to consumers in Michigan and elsewhere using marks virtually identical to Breeze Smoke LLC's ("Breeze Smoke") "BREEZE" trademarks where such unauthorized use is already causing rampant confusion in the marketplace and Breeze Smoke is highly likely to succeed on the merits on its trademark, unfair competition, and related state law claims.

2.  Whether Defendants should be temporarily restrained and preliminarily enjoined from using Breeze Smoke's BREEZE trademarks or simulations thereof in connection with their sale of unauthorized vaping products where Breeze Smoke would suffer irreparable harm in the absence of an injunction.

3.  Whether Defendants should be temporarily restrained and preliminarily enjoined where a balance of the hardships strongly favors an injunction.

4.  Whether Defendants should be temporarily restrained and preliminarily enjoined where the public interest strongly favors an injunction.

<u>To all of the above:</u>

Breeze Smoke answers: Yes

Defendants presumably answer: No

The Court should answer: Yes

# I.  INTRODUCTION

Breeze Smoke moves for a temporary restraining order and preliminary injunction to immediately combat and stop Defendants' promotion, offer, and sale of products bearing the mark BREEZY, a mark virtually identical to Breeze Smoke's BREEZE trademarks.  Defendants' unauthorized use of Breeze Smoke's well-known brand is already causing rampant confusion in the marketplace.  If not temporarily restrained and preliminarily enjoined by this Court, Defendants will continue their unauthorized uses of Breeze Smoke's market-leading brand in connection with their inferior products, causing ever more confusion in the marketplace and irreparably harming Breeze Smoke.  This is not the first time that Breeze Smoke has been forced to seek immediate injunctive relief against infringers seeking to capitalize on the immense popularity of its BREEZE brand.  Breeze Smoke successfully obtained such relief in those prior cases.  This Court likewise should immediately stop Defendants' blatant infringement; Breeze Smoke's Motion for Temporary Restraining Order and Preliminary Injunction should be granted.

# II.  STATEMENT OF FACTS

## A.  BREEZE SMOKE'S BREEZE MARKS.

Breeze Smoke is engaged in the business of manufacturing and selling a variety of vaping products, including disposable electronic vaping devices, under its BREEZE trademarks.  Declaration of Steven Haddad ("Haddad Decl."), ¶2.

1

For years, and since well-prior to Defendants' use, Breeze Smoke has continuously used its BREEZE trademarks in connection with electronic cigarettes, vaping products, including disposable vaping products, and related products in Michigan and throughout the United States.  *Id.* at ¶5.  By itself and through its predecessors in interest, Breeze Smoke has offered and sold certain vaping products in connection with its BREEZE marks since at least 2014.  *Id.* at ¶6.  Examples showing Breeze Smoke's use of its BREEZE marks are shown below:



In addition to its widespread and continuous use of the BREEZE trademarks, Breeze Smoke owns several United States Trademark Registrations and Applications for its BREEZE marks.  Haddad Decl., ¶¶8-9, Ex. A, B.  Breeze Smoke further owns several state trademark registrations for BREEZE. *Id.* at ¶11. Collectively, Breeze Smoke's BREEZE registrations and applications and its longstanding common law rights in the BREEZE marks shall be referred to herein as the "BREEZE Marks."  Collectively, the products and services in connection

45942826.3

with which Breeze Smoke uses its BREEZE Marks shall be referred to herein as the "BREEZE Goods and Services."

## B. BREEZE SMOKE'S USE OF THE BREEZE MARKS.

Breeze Smoke's BREEZE Goods and Services are promoted, offered and sold through online retail platforms as well as at a substantial number of bricks-and-mortar locations throughout Michigan and the United States.  Haddad Decl., ¶15.  Breeze Smoke has spent significant time, effort, and resources establishing its BREEZE Marks in the minds of its customers and the public via advertisements and promotions as representative of Breeze Smoke and its high quality tobacco and vaping products.  *Id.* at ¶16.  To date, Breeze Smoke has spent millions of dollars advertising and marketing its BREEZE-branded Goods and Services.  *Id.* at ¶17. Breeze Smoke has also generated substantial revenue from the sale of products and services under its BREEZE Marks.  *Id.* at ¶22.  Overall, Breeze Smoke has generated millions of dollars in revenue from the sale of its BREEZE-branded disposable vaping pens and related products.  *Id.*

As a result of Breeze Smoke's continuous use, extensive sales, advertising, and promotion, the BREEZE Marks enjoy widespread recognition and an excellent reputation.  *See id.* at ¶¶23-25, Ex. E.  The public recognizes the BREEZE Marks as emanating exclusively from Breeze Smoke and emblematic of its high quality products and services.  *See id.*  The BREEZE Marks have become intangible assets of substantial commercial value to Breeze Smoke.  *Id.* at ¶26.

45942826.3

Unfortunately, the immense popularity of Breeze Smoke's BREEZE products has given rise to a number of copycats, and Breeze Smoke has been forced a number of times to seek immediate injunctive relief against infringers seeking to capitalize on the goodwill of its BREEZE brand.   Breeze Smoke successfully secured temporary restraining orders and/or preliminary injunctions in those prior cases.  *See id.*, ¶28, Ex. F, G.

## C.   DEFENDANTS' INFRINGING CONDUCT.

Breeze Smoke first learned of the possible existence of the Infringing Products in August 2022; it sought but did not receive further substantiation.  *Id.* at ¶29.  Then, in late October 2022, Breeze Smoke learned that Defendants were and are marketing, promoting, advertising, offering, distributing, and selling disposable vaping products using the mark "BREEZY" (the "Infringing Products"):




*Id.* at ¶¶28, 33-34, Ex. H.  The same month, Breeze Smoke sent cease and desist letters to Defendants demanding that they immediately stop promoting and selling

the Infringing Products.  *Id.* at ¶35, Ex. I.  But to date, Defendants are still selling the Infringing Products.  *Id.* at ¶55.

Defendants are directly competing with Breeze Smoke through their unauthorized sale of the Infringing Products, ultimately depriving Breeze Smoke of sales by selling highly similar vaping products under a nearly identical mark to the same or similar classes of customers as Breeze Smoke.  *Id.* at ¶50.  Breeze Smoke has not licensed or otherwise authorized Defendants to use their highly valuable and well-established BREEZE Marks in any manner whatsoever.  *Id.* at ¶52.

Because Defendants' Infringing Products have not undergone Breeze Smoke's quality control processing, Breeze Smoke cannot vouch for the safety or quality of Defendants' Infringing Products.  *Id.* at ¶42.  Vaping products that do not undergo rigorous testing and quality control procedures such as those Breeze Smoke has in place can pose substantial safety risks for consumers.  *Id.* at ¶43.

Because of the immense popularity of Breeze Smoke's BREEZE Goods and Services and the tremendous value of the BREEZE brand, there can be little doubt that Defendants are promoting, selling, and offering their Infringing Products to consumers with the express intent to deceive customers into thinking they are BREEZE Goods and Services and to capitalize on the hard-earned goodwill and excellent reputation Breeze Smoke has built up in its BREEZE brand.  *Id.* at ¶32, 54.

### III.   **ARGUMENT**

## A.   LEGAL STANDARD

Courts consider four factors in determining whether to issue a temporary restraining order and preliminary injunction:

1) whether the movant has a strong likelihood of success on the merits;

2) whether the movant would suffer irreparable injury without the injunction;

3) whether issuance of the injunction would cause substantial harm to others; and

4) whether the public interest would be served by the issuance of the injunction.

*Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007); *see also, e.g.*, *Black v. Cincinnati Fin. Corp.*, No. 1:11-cv-210, 2011 WL 1640962, *1 (S.D. Ohio May 2, 2011) ("[The] difference [between TROs and preliminary injunctions] is largely academic as the same factors apply to both." (citing *Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008)). "These factors simply guide the discretion of the court; they are not meant to be rigid and unbending requirements." *In re Eagle-Picher Indus., Inc.*, 963 F.2d 855, 859 (6th Cir. 1992) (citations omitted); *see also Victory Lane Quick Oil Change, Inc. v. Darwich,* 799 F. Supp. 2d 730, 733 (E.D. Mich. 2011).

Because each of the above factors weighs in favor of Breeze Smoke, the Court should issue the requested injunction and temporary restraining order.

45942826.3

**B.     BREEZE SMOKE WILL SUCCEED ON THE MERITS OF ITS TRADEMARK INFRINGEMENT CLAIMS.**

In establishing the first TRO and preliminary injunction factor, "it is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997); *Little Caesar Enterprises, Inc. v. Miramar Quick Serv. Rest. Corp.*, 2019 WL 3219844, at *3 (E.D. Mich. July 16, 2019), *aff'd*, 2020 WL 4516289 (6th Cir. June 25, 2020).

The Lanham Act provides a federal cause of action for infringement of a federally registered trademark.  15 U.S.C. § 1114(a).  Likewise, Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides a federal cause of action for infringement of marks that have not obtained federal registration.  *See Matal v. Tam*, 137 S. Ct. 1744, 1752 (2017); *Tumblebus, Inc. v. Cranmer*, 399 F.3d 754, 760-61 (6th Cir. 2005).  To prevail on such claims, a plaintiff must show that (1) it has protectable trademark rights and (2) there is a likelihood of confusion, mistake or deception as to the origin of the goods due to the infringer's use of the mark or dress.  *See* 15 U.S.C. §§ 1114, 1125; *Tumblebus*, 399 F.3d at 760–61.

Breeze Smoke has demonstrated a likelihood of success on the merits in other cases enforcing its BREEZE Marks.  Haddad Decl., ¶28, Ex. F, G.  For the

reasons set forth below, Breeze Smoke respectfully requests that the Court likewise find Breeze Smoke is likely to succeed on the merits in this case.

1.  Breeze Smoke has valid and protectable trademark rights in the BREEZE Marks.

Breeze Smoke's BREEZE marks are valid and protectable.  Breeze Smoke's trademark registrations for BREEZE are *prima facie* evidence of the validity of Breeze Smoke's BREEZE marks, as well as Breeze Smoke's ownership and exclusive right to use the marks nationwide in connection with the goods listed in the registrations.  *See* 15 U.S.C. § 1115(a); Haddad Decl., ¶8; Ex. A.  These registrations alone should establish that Breeze Smoke has a protectable mark.

Furthermore, Breeze Smoke's BREEZE Marks are protectable because they are inherently distinctive.  Courts classify trademarks into categories of generally increasing distinctiveness: generic, descriptive, suggestive, arbitrary, or fanciful. *Two Pesos, Inc. v. Taco Cabana, Inc*., 505 U.S. 763, 768 (1992).  Suggestive, arbitrary, and fanciful marks are inherently distinctive and are protectable so long as the putative owner has actually used the mark, which is the case here.  *Id.*; *see also Innovation Ventures, LLC v. N.V.E., Inc.*, 694 F.3d 723, 730 (6th Cir. 2012).

The BREEZE Marks are at least suggestive.  *See Tumblebus Inc*., 399 F.3d at 761 n.5 ("A suggestive mark 'suggests rather than describes an ingredient or characteristic of the goods and requires the observer or listener to use imagination and perception to determine the nature of the goods.'").  The word "breeze" means

"a light gentle wind" and suggests a thing "easily done."  *See* Haddad Decl. ¶19, Ex. D.  The term "BREEZE" suggests, but does not directly indicate, that Breeze Smoke's vaping products are easy to use and produce quality smoke, and that they are designed to help cigarette smokers switch their habits "with a breeze."  Haddad Decl., ¶18.  As such, the BREEZE Marks require a "degree of inferential reasoning" for a consumer to discern the nature of the goods and require an observer of the BREEZE Marks to use their imagination and perception to determine the nature of the goods.  *See Tumblebus Inc*., 399 F.3d at 763 (finding TUMBLEBUS suggestive of mobile gymnastics instruction).  Because the BREEZE Marks are at least suggestive they are inherently distinctive.

At least one other court in this District and the United States Patent and Trademark Office ("USPTO") agree.  On February 8, 2021, Judge Levy entered an order granting Breeze Smoke's request for a preliminary injunction against another infringer and specifically finding that Breeze Smoke's BREEZE Marks are protectable. *See* Haddad Decl., ¶28, Ex. F at PageID 755.  Further, only "[f]anciful, arbitrary, and suggestive marks, often referred to as 'inherently distinctive' marks, are registrable on the Principal Register without proof of acquired distinctiveness." *See* TMEP §1209.01(a).  Marks that are merely descriptive of the goods may not be registered on the Principal Register absent a showing of acquired distinctiveness under 15 U.S.C. §1052(f).  The USPTO published Breeze Smoke's BREEZE SMOKE, BREEZE PLUS, BREEZE PRO, BREEZE PALM and two BREEZE

applications without a descriptiveness refusal or proof of acquired distinctiveness. *See* Haddad Decl., ¶10, Ex. C.   Accordingly, the USPTO via the examining attorney necessarily found the mark "inherently distinctive" and protectable.  Judge Levy's order and the USPTO's determination are further evidence that Breeze Smoke's BREEZE Marks are at least suggestive.

Additionally, while not required of suggestive marks, the BREEZE Marks have acquired secondary meaning.[1]   *See Induct-O-Matic Corp. v. Inductotherm Corp.*, 747 F2d. 358, 364 (6th Cir. 1984) (stating "proof of secondary meaning is not required with regard to a suggestive term").  The evidence shows that consumers understand that the BREEZE Marks emanate from Breeze Smoke, a market leader and highly reputable company in the industry.  Haddad Decl., ¶¶3, 23-25, Ex. E.   Breeze Smoke has continuously sold vaping products with the BREEZE Marks for years and since well prior to Defendants.  *Id.* at ¶¶5-6, 29-30. It has spent millions of dollars advertising its BREEZE Goods and Services and sold millions of dollars of products bearing the BREEZE Marks.  *Id.* at ¶¶16-17, 22.

---

[1] To demonstrate secondary meaning, the evidence must show that "in the minds of the public, the primary significance of the trade dress is to identify the source of the product rather than the product itself." *Inwood Labs., Inc. v. Ives Labs, Inc*., 456 U.S. 844, 851 n. 11 (1982). The following factors should be analyzed when determining whether a mark has acquired secondary meaning: (1) direct consumer testimony; (2) consumer surveys; (3) exclusivity, length, and manner of use; (4) amount and manner of advertising; (5) amount of sales and number of customers;

10

2.      <u>Breeze Smoke has shown a likelihood of confusion as to the origin of the BREEZE Marks.</u>

Breeze Smoke has shown that there is a likelihood of confusion under this Circuit's eight-factor test.[2]  *Gen. Motors Corp. v. Keystone Auto. Indus., Inc*., 453 F.3d 351, 354 (6th Cir. 2006).  "[T]hese factors imply no mathematical precision, and a plaintiff need not show that all, or even most, of the factors listed are present[.]"  *Wynn Oil Co. v. Am. Way Serv. Corp*., 943 F.2d 595, 600 (6th Cir. 1991) (quotations omitted).[3]

(a)      Strength of the BREEZE Marks.

"The strength of a mark is a factual determination of the mark's distinctiveness."  *Lorillard Tobacco Co. v. Van Dyke Liquor Mkt., Inc*., 471 F. Supp. 2d 822, 828 (E.D. Mich. 2007) (internal citations omitted).  Courts look to two characteristics: (1) the mark's distinctiveness (conceptual strength) and (2) degree of recognition in the marketplace (commercial strength).  *Homeowners Group, Inc. v. Home Marketing Specialists, Inc.*, 931 F.2d 1100, 1107 (6th Cir.

---

(6) established place in the market; and (7) proof of intentional copying. *R.L. Polk & Co. v. INFOUSA, Inc.*, 230 F. Supp. 2d 780, 785 (E.D. Mich. 2002).

[2] The likelihood of confusion factors used by courts in the Sixth Circuit are:  (1) strength of the senior mark; (2) relatedness of the goods or services; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) the intent of defendant in selecting the mark; and (8) likelihood of expansion of the product lines.  *Frisch's Rest., Inc. v. Shoney's Inc.*, 759 F.2d 1261, 1264 (6th Cir. 1985).

1991); *Maker's Mark Distillery, Inc. v. Diageo North America, Inc*, 679 F.3d 410, 419 (6th Cir. 2012).

The BREEZE Marks are conceptually strong because they are at least suggestive and inherently distinctive, as discussed in Sections III.B.1, *supra*. The BREEZE Marks are also highly distinctive because of their commercial strength and recognition in the marketplace. Consumers instantly recognize BREEZE products by the BREEZE Marks and give the BREEZE Goods and Services high praise. Haddad Decl., ¶¶3, 23-25; Ex. E. Further, Breeze Smoke has spent significant amounts of money advertising the BREEZE disposable vapes and generated millions of dollars in sales from the product.  Haddad Decl., ¶¶16-17, 22. Thus, Breeze Smoke's BREEZE Marks have earned strong commercial recognition, in addition to being conceptually strong.

(b)     Relatedness of the goods.

When the goods at issue are marketed and consumed "such that buyers are likely to believe that the [goods], similarly marked, come from the same source, or are somehow connected with or sponsored by a common company," there is a high likelihood of confusion.  *Homeowners Grp., Inc.*, 931 F.2d at 1108-09; *see also Lorillard Tobacco Co*., 471 F. Supp. 2d at 829.  Here, Defendants sell highly similar products—i.e., disposable electronic cigarettes—to Breeze Smoke's BREEZE Goods and Services under a highly similar mark.  This factor favors a finding of likelihood of confusion.

12

(c)     Similarity of the marks.

In general, "[s]imilarity of marks is a factor of considerable weight." *Daddy's Junky Music Stores, Inc.*, 109 F.3d 275, 283 (6th Cir. 1997); *see Wynn Oil Co.*, 943 F.2d at 601.   Marks do not have to be identical to infringe.   *See Innovation Ventures, LLC,* 763 F.3d at 534-35 (finding that 6 Hour Energy, 7 Hours Energy, and 14 Hours Energy all infringed on the 5 Hour Energy mark). Additionally, the test is not a pure side-by-side comparison.  *Wynn Oil*, 943 F.2d. at 601.  Instead marks are similar if the junior mark confuses consumers "who may have a general, vague, or even hazy impression or recollection" of the senior mark. *Id.* (internal quotations omitted).

When analyzing the similarity of the marks, the Court considers the sound, appearance, meaning, and connotation of each mark.  *See Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1188 (6th Cir. 1988).   Further, if one word or feature of a composite trademark is the salient or dominant portion of the mark, it may be given greater weight than the surrounding elements.  *See AWGI, LLC v. Atlas Trucking Co., LLC,* 998 F.3d 258, 266-67 (6th Cir. 2021).

Here, the parties' marks are virtually identical because "BREEZE" is the salient or dominant portion of all of them.  Further, given the identical nature of the product and the tremendous strength of Breeze Smoke's BREEZE brand, a consumer could easily mistake a product branded BREEZY as fitting within the Breeze Smoke family of Goods and Services.  Indeed, as set forth in Section B.2.d,

13

*infra*, such confusion is already occurring.  Therefore, this factor weighs strongly in favor of Breeze Smoke.

        (d)    Evidence of actual confusion.

Where it exists, evidence of actual confusion can be the ***most important*** factor in assessing a likelihood of confusion.  *Gen. Motors Corp.*, 453 F.3d at 356. Even a single instance of actual confusion can increase the likelihood of confusion. *See Innovation Ventures, LLC*, 763 F.3d at 536.

Here, actual confusion in the marketplace is already occurring: many of Breeze Smoke's customers have reached out to Breeze Smoke to inquire if the Infringing Products emanate from or are associated with Breeze Smoke. *See* Haddad Decl., ¶¶ 45-46, Ex. K, L. Additionally, multiple customers contacted Breeze Smoke to complain about the inferior quality of the Infringing Products. *See id.* at ¶¶47-49, Ex. M, N.  One customer stated the Infringing Products tasted "burnt" and another stated that after three days the Infringing Products "started blowing its juice out and got really hot."  *See id.*  This factor weighs heavily in favor of a finding of likely confusion.

        (e)    Marketing channels used.

This factor pertains to how and to whom the respective goods of the parties are sold.  *Homeowners Group, Inc.*, 931 F.2d at 1110; *see also Daddy's Junky Music Stores, Inc.*, 109 F.3d at 285.

Here, the parties use (or are) the same predominant channels to market the product—tobacco and vape stores, and convenience stores.  Haddad Decl., ¶¶34, 44; s*ee, e.g., Lorillard Tobacco Co.*, 471 F. Supp. 2d at 829–30 (both parties selling cigarettes used liquor stores to market product).  Further, the parties' classes of customers are the same: users of vaping products.  *Id.* ¶¶40, 50.  This factor weighs in favor of Breeze Smoke.

(f)     Likely degree of purchaser care.

The less care that a purchaser is likely to take in purchasing a product, the greater the likelihood of confusion.  *Wynn Oil*, 943 F.2d at 602; *Darwich*, 799 F. Supp. 2d at 736.  Only when the purchaser has expertise or when goods are expensive or unusual is a higher standard of care proper.  *Darwich,* 799 F. Supp. 2d at 736.  The parties' products are fairly inexpensive and consumers of disposable vaping products typically do not exercise a high degree of care in making their purchases.  *See* Haddad Decl., ¶¶20-21; *see also Lorillard Tobacco Co.*, 471 F. Supp. 2d at 830.  This factor weighs in favor of Breeze Smoke.

(g)     Defendants' intent in selecting the mark.

Courts may infer intentional infringement when there is circumstantial evidence of copying.  *Progressive Distribution Services, Inc. v. United Parcel Service, Inc.*, 856 F.3d 416, 436 (6th Cir. 2017).  Knowingly using a protected mark is strong circumstantial evidence of intentional infringement.  *See id.*  Here, BREEZE Goods and Services are well known and popular in the vaping industry.

15

Haddad Decl., ¶¶23-25, Ex. E.  Defendants know this because they sell Breeze Smoke's BREEZE Goods and Services in addition to the Infringing Products.  *Id.* at ¶40.  Defendants chose to sell the Infringing Products in an attempt to capitalize on Breeze Smoke's success and divert unknowing customers.   When Breeze Smoke provided notice to Defendants of their infringing use, they had the opportunity to avoid litigation by removing the Infringing Products from their shelves and distribution channels.  *Id.* at ¶35-36, Ex. I. Rather than comply and cease their unlawful use of the BREEZE Marks, Defendants intentionally ignored or unapologetically asserted that they would continue to sell the Infringing Products. *See id.* at ¶38, Ex J.  This factor weighs in favor of Breeze Smoke.

       (h)    Likelihood of expansion of the product lines.

A strong possibility that either party will expand its business to compete with the other or be marketed to the same consumers will weigh in favor of finding that the present use is infringing.  *Gen. Motors Corp., Inc*., 453 F.3d at 357–58. Here, Breeze Smoke and Defendants already operate in the same line of business: selling disposable vapes.  Breeze Smoke and Defendants will continue to compete for customers in the same space, which only increases the likelihood of confusion between BREEZE and BREEZY for vapes.  Haddad Decl., ¶¶40, 44, 54.  Further, Breeze Smoke will continue to expand its business and make new vaping products to stay ahead of the competition.  *Id* at ¶53.

(i)     Summary of the factors.

While Breeze Smoke need not establish every factor, it has done so here. *See R.L. Polk & Co.*, 230 F. Supp. 2d at 795 (even a showing of five of eight factors is sufficient to show likelihood of success on the merits of its Lanham Act claims).  Because confusion is highly likely, Breeze Smoke is highly likely to succeed on its trademark infringement claims.

## C.    BREEZE SMOKE WILL SUFFER IRREPARABLE INJURY IF A TEMPORARY RESTRAINING ORDER AND INJUNCTION ARE NOT ISSUED.

The Lanham Act entitles Breeze Smoke to a rebuttable presumption of irreparable harm upon finding a likelihood of success on the merits.  15 U.S.C. § 1116(a).  Further, courts recognize that irreparable injury ordinarily follows when a likelihood of confusion or possible risk to reputation appears from infringement. *Lorillard Tobacco Co.*, 453 F.3d at 381–82.  A finding of irreparable injury flows from "both the potential difficulty of proof of plaintiff's damages, and also from the impairment of intangible values[.]"  *Victory Lane Quick Oil Change, Inc.*, 799 F. Supp. 2d at 736.

Here, Breeze Smoke has demonstrated a strong likelihood of confusion by showing that the BREEZE Marks are strong and Defendants sell identical products, under a confusingly similar mark in identical trade channels to identical consumers.

In addition, the fact that Defendants are selling the Infringing Products proves that Defendants derive benefits from Breeze Smoke's customer goodwill. Defendants know Breeze Smoke is a well-known brand in the vaping industry, and selling the Infringing Products is an attempt to capitalize on confusion caused by the overall similarity of the marks and products.

Breeze Smoke should not have to suffer harm to its reputation and consumers goodwill due to Defendant's infringement. *See Lucky's Detroit, LLC, v. Double L, Inc*., 522 Fed. App'x. 553, 555 (6th Cir. 2013) ("In trademark infringement cases, a likelihood of confusion or possible risk to the requesting party's reputation satisfies the irreparable injury requirement."); *see also Certified Restoration Dry Cleaning Network L.L.C.*, 511 F.3d at 550 ("The loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute."); *Ready for the World Inc. v. Riley*, No. 19-10062, 2019 WL 498813, at *3 (E.D. Mich. Feb. 8, 2019) (granting preliminary injunction because infringement of plaintiff's mark could "negatively impact" its "relationship with those who consume" its product).

A preliminary injunction is necessary to prevent this continued harm to Breeze Smoke and the public.

## D.   THE BALANCE OF HARMS FAVORS A TRO AND INJUNCTION.

The balance of harms also favors entry of a TRO and injunction. *See R.L. Polk & Co.*, 230 F. Supp. 2d at 796 (plaintiff's interest in preserving its rights in its

mark outweighs temporary inconvenience to defendant); *Am. Auto. Ass'n v. Dickerson*, 995 F. Supp. 2d 753, 758 (E.D. Mich. 2014) ("it does not appear Defendant would face any hardship in restraining from trademark infringement while Plaintiff faces the possibility of the loss of goodwill").

Here, Defendants sell other products besides the Infringing Products.  By immediately ceasing marketing and sales of the Infringing Products, they will not be prevented from continuing non-infringing aspects of their business.  On the other hand, Breeze Smoke is suffering significant harm from Defendants' activities that is leading to a loss of its consumer goodwill that will be nearly impossible to recover—a harm, as set forth above, that courts in this District frequently recognize as irreparable.  The balance of harms thus favors issuance of a preliminary injunction.

## E.    THE PUBLIC INTEREST FAVORS A TRO AND INJUNCTION.

Finally, a TRO and injunction best serve the public interest by protecting a trademark holder's interest in its mark and by preventing consumer confusion.  *See Darwich*, 799 F. Supp. 2d at 737; *see also R.L. Polk & Co.*, 230 F. Supp. 2d at 796-97.  Protecting Breeze Smoke and the public from confusion over the source of electronic cigarettes serves the public interest.  *See Bailey v. Chattem*, 684 F.2d 386, 391 (6th Cir. 1982) (acknowledging "the strong public interest in free and fair competition"); *see also Nedschroef Detroit Corp. v. Bemas Enter. LLC*, 106 F.

45942826.3

Supp. 3d 874, 891 (E.D. Mich. 2015) (stating, "The public has an interest in discouraging unfair competition").

Additionally, Breeze Smoke's disposable vaping products undergo rigorous quality control measures, including but not limited to Breeze Smoke's high standards for manufacturing and product testing.    Haddad Decl.  ¶¶41-42. Consumers expect their disposable vaping products to be safe for use and can expect such quality from Goods and Services bearing the BREEZE Marks.  *See id.* The Infringing Products do not undergo the Breeze Smoke quality assurance measures since they are not Breeze Smoke products.  In fact, one customer told Breeze Smoke that the Infringing Products "started blowing its juice out and got really hot."  *Id.* at ¶49, Ex. N.  Thus, a temporary restraining order and an injunction should immediately be issued to ensure the public's trust in the vaping products they purchase.

## IV.   <u>EXPEDITED DISCOVERY IS APPROPRIATE.</u>

Under Fed. R. Civ. P. 26(d)(1), parties can begin discovery before their Rule 26(f) conference if a district court authorizes them to do so upon a showing of good cause.  *N. Atl. Operating Co., Inc. v. JingJing Huang*, 194 F. Supp. 3d 634, 637 (E.D. Mich. 2016).  Within this Circuit, district courts have found good cause for granting expedited discovery when the moving party alleges infringement.  *Id.*; *Arista Records, LLC v. Does 1–4*, 2007 WL 4178641, *1 (W.D. Mich. Nov. 20, 2007).  There is good cause here to order immediate discovery to determine where

and how Defendants are sourcing, offering, marketing, and selling their Counterfeit Products.   Given that Defendants' Counterfeit Products are potentially seriously harmful to individuals, discovery should begin immediately to discover the extent of Defendants' infringing sales.

## V.   <u>CONCLUSION</u>

For all the reasons stated, Breeze Smoke requests that the Court grant its motion and enter an order temporarily restraining and enjoining Defendants from using the BREEZE Marks.

Dated:  November 22, 2022          Respectfully submitted,

By:  <u>/s/ *Mary A. Hyde*          </u>
Mary A. Hyde
Honigman LLP
155 North Wacker Dr., Suite 3100
Chicago, IL 60606
Telephone:  (312) 701-9360
mhyde@honigman.com

*One of the Attorneys for the Breeze Smoke LLC*

21

45942826.3

## <u>CERTIFICATE OF SERVICE</u>

I certify that on November 22, 2022 a copy of the foregoing was electronically filed with the Clerk of Court using the ECF system which will send notification to all counsel of record.  Further, a copy of the foregoing and all documents in support thereof was or shall be served upon each Defendant with the Complaint and Summons, as set forth in the Proofs of Service—Returned Executed to be filed in connection herewith.

*/s/ Mary A. Hyde*
*One of the Attorneys for Breeze Smoke LLC*

45942826.3