UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| BREEZE SMOKE, LLC,<br><br>    Plaintiff,<br><br>vs.<br><br>YATIN ENTERPRISES, INC *et al.*,<br><br>    Defendants. | Case No. 2:22-cv-12803-PDB-CI<br><br>Hon. Paul D. Borman<br><br>Magistrate Judge Curtis Ivy, Jr. |

### DECLARATION OF STEVEN HADDAD

1. My name is Steven Haddad and I am an executive of Capital Sales Company in Hazel Park, Michigan and a Managing Member of Breeze Smoke LLC. Capital Sales Company is one of two nationwide distributors of Plaintiff Breeze Smoke LLC's ("Breeze Smoke") products. I have personal knowledge of all facts contained herein.

2. Breeze Smoke manufactures, markets, and sells a variety of vaping products, including disposable electronic vaping devices, under its BREEZE trademarks.

3. Breeze Smoke is a market leader and highly reputable company in the vaping industry.

4. Disposable vaping products are an innovative part of the vaping and tobacco industry and very popular with consumers. Disposable vaping devices are relatively inexpensive and allow consumers to simply throw away the devices when they are finished rather than having to buy a more expensive device that requires additional purchases of cartridges.

5. For years and since well-prior to Defendants' use, Breeze Smoke has continuously used its BREEZE trademarks in connection with electronic cigarettes, vaping products, including disposable vaping products and related products in Michigan and throughout the United States.

6. By itself and through its predecessors in interest, Breeze Smoke has offered and sold certain vaping-related products in connection with its BREEZE trademarks since at least 2014.

7. Examples showing Breeze Smoke's use of its BREEZE trademarks are shown below:



8. In addition to its widespread and continuous use of the BREEZE trademarks, Breeze Smoke owns several United States Trademark Registrations for its BREEZE marks, as set forth on the following chart:

| | Mark | Reg. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|---|
| 1 | BREEZE PLUS | 6,770,534 | Filed: October 10, 2020<br><br>Registered: June 28, 2022<br><br>First Use Date: at least as early as March 1, 2020 | Class 34: Disposable Electronic Cigarettes |
| 2 | BREEZE | 6,296,005 | Filed: June 6, 2019<br><br>Registered: March 16, 2021<br><br>First Use Date: at least as early as April 6, 2020 | Class 25: Beanies; hats; hooded sweatshirts; long-sleeved shirts; shirts; sweaters; tank tops; graphic T-shirts; short-sleeved or long-sleeved T-shirts; sweat shirts; T-shirts; tee shirts; woolly hats |
| 3 | BREEZE (stylized) | 6,296,004 | Filed: June 6, 2019<br><br>Registered: March 16, 2021<br><br>First Use Date: | Class 25: Beanies; hats; hooded sweatshirts; long-sleeved shirts; shirts; sweaters; tank tops; graphic T-shirts; short-sleeved or long-sleeved T-shirts; sweat shirts; |

|  |  |  | at least as early as April 6, 2020 | T-shirts; tee shirts; woolly hats |
|---|---|---|---|---|

Copies of the foregoing United States Trademark Registrations are attached hereto as **Exhibit A** and incorporated herein by reference.

9. Breeze Smoke also owns numerous pending United States Trademark Applications for its BREEZE marks, as set forth on the below chart:

|  | Mark | Reg./App. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|---|
| 1 | BREEZE SMOKE | 90/012,117 | Filed: June 20, 2020<br><br>First Use Date: at least as early as March 1, 2020 | Class 34: Disposable Electronic Cigarettes |
| 2 | BREEZE PALM | 90/650,997 | Filed: April 16, 2021<br><br>Notice of Allowance Issued: November 1, 2022 | Class 34: cigarette wraps; cigarette rolling papers; wraps in the nature of tobacco wraps; tobacco wraps; pre-rolled smoking cones; rolling paper cones |
| 3 | BREEZE PRO | 90/555,765 | Filed: March 2, 2021<br><br>Notice of Allowance Issued: | Class 34: Disposable Electronic Cigarettes |

4

| | | | November 1, 2022 | |
|---|---|---|---|---|
| 4 | BREEZE | 90/256,675 | Filed: October 15, 2020 | Class 34: Ashtrays for smokers; Lighters for smokers; Tobacco grinders |
| 5 | BREEZE | 90/292,552 | Filed: November 2, 2020 | Class 14: Ornamental lapel pins<br><br>Class 16: Decals; Posters; Stickers; Plastic food storage bags for household use<br><br>Class 18: Handbags; Wallets; Backpacks; Book bags; Sports bags; All-purpose reusable carrying bags<br><br>Class 21: Containers for household use; Insulating sleeve holders for beverage cans; Plastic storage containers for domestic use; Plastic storage containers for household use; Portable coolers, non-electric<br><br>Class 34: Cigarette rolling papers; Smokers' rolling trays |
| 6 | BR≋ZE | 90/292,558 | Filed: November 2, 2020 | Class 14: Ornamental lapel pins |

|   |   |   |   | Class 16:  Decals; Posters; Stickers; Plastic food storage bags for household use |
|---|---|---|---|---|
|   |   |   |   | Class 18:  Handbags; Wallets; Backpacks; Book bags; Sports bags; All-purpose reusable carrying bags |
|   |   |   |   | Class 21:  Containers for household use; Insulating sleeve holders for beverage cans; Plastic storage containers for domestic use; Plastic storage containers for household use; Portable coolers, non-electric |
|   |   |   |   | Class 34:  Cigarette rolling papers; Smokers' rolling trays |
| 7 | BREEZE | 90/292,573 | Filed: November 2, 2020 | Class 7:  Vacuum packaging machines

Class 30:  Candy; Candy bars

Class 32:  Bottled water |
| 8 | BR≋ZE | 90/292,568 | Filed: November 2, 2020 | Class 7:  Vacuum packaging machines |

6

|   |   |   |   | Class 30: Candy; Candy bars<br><br>Class 32: Bottled water |
|---|---|---|---|---|
| 9 | BREEZE | 90/292,582 | Filed: November 2, 2020 | Class 3: Electronic cigarette liquid comprised of essential oils; to the extent any of the foregoing involves use of cannabis, such cannabis shall have a delta-9 THC concentration of not more than 0.3% on a dry weight basis<br><br>Class 5: Plant extracts for pharmaceutical purposes, namely, for the treatment of nausea, anxiety, pain, glaucoma, seizures, multiple sclerosis and Crohn's Disease; to the extent any of the foregoing involves cannabis, such cannabis shall have a delta-9 THC concentration of not more than 0.3% on a dry weight basis<br><br>Class 34: Electronic cigarette liquids comprised of flavoring in liquid form, other |

| | | | | |
|---|---|---|---|---|
| | | | | than essential oils, used to refill electronic cigarette cartridges; to the extent any of the foregoing involves use of cannabis, such cannabis shall have a delta-9 THC concentration of not more than 0.3% on a dry weight basis; smoking pipes; smoking pipe cleaners; electronic smoking pipes; oral vaporizers for smokers |
| 10 | BREEZE | 90/292,579 | Filed: November 2, 2020 | Class 3: Electronic cigarette liquid comprised of essential oils; to the extent any of the foregoing involves use of cannabis, such cannabis shall have a delta-9 THC concentration of not more than 0.3% on a dry weight basis<br><br>Class 5: Plant extracts for pharmaceutical purposes, namely, for the treatment of nausea, anxiety, pain, glaucoma, seizures, multiple sclerosis and Crohn's Disease; to the extent any of the foregoing involves |

| | | | | |
|---|---|---|---|---|
| | | | | cannabis, such cannabis shall have a delta-9 THC concentration of not more than 0.3% on a dry weight basis<br><br>Class 34: Electronic cigarette liquids comprised of flavoring in liquid form, other than essential oils, used to refill electronic cigarette cartridges; to the extent any of the foregoing involves use of cannabis, such cannabis shall have a delta-9 THC concentration of not more than 0.3% on a dry weight basis; smoking pipes; smoking pipe cleaners; electronic smoking pipes; oral vaporizers for smokers |

Copies of the foregoing applications, along with printouts of the accompanying TESS pages reflecting their status, are attached hereto as **Exhibit B** and incorporated herein by reference.

10. The United States Trademark and Patent Office ("USPTO") published Breeze Smoke's BREEZE SMOKE, BREEZE PLUS, BREEZE PRO, BREEZE PALM, and two BREEZE applications without a descriptiveness refusal or

proof of acquired distinctiveness. Copies of the USPTO notices of publication indicating that the foregoing applications should be entitled to registration on the Principal Register are attached hereto as **Exhibit C** and incorporated herein by reference.

11. Breeze Smoke also owns Michigan State Trademark Registrations 802,511,431 and 802,511,553 for BREEZE.

12. The Michigan BREEZE registrations were registered on August 13, 2020 and assert use in commerce since at least as early as February 4, 2020.

13. Collectively, Breeze Smoke's foregoing BREEZE registrations and applications and its longstanding common law rights in the BREEZE marks shall be referred to herein as the "BREEZE Marks."

14. Collectively, the products and services in connection with which Breeze Smoke uses its BREEZE Marks, including the goods and services identified in the foregoing applications and registrations shall be referred to herein as the "BREEZE Goods and Services."

15. Breeze Smoke's BREEZE Goods and Services are promoted, offered, and sold through online retail platforms as well as at a substantial number of bricks-and-mortar locations throughout Michigan and the United States.

16. Breeze Smoke has spent significant time, effort, and resources establishing its BREEZE Marks in the minds of its customers and the public via

advertisements and promotions, including through online advertising and promotion, as representative of Breeze Smoke and its high quality tobacco and vaping goods and services.

17. To date, Breeze Smoke, by itself and through its distributors, has spent millions of dollars on advertising and marketing its BREEZE-branded vaping goods and services.

18. Breeze Smoke's BREEZE vaping goods are easy to use, easy to inhale, and produce quality smoke. They are designed to help cigarette smokers switch their habit "with a breeze."

19. The word "breeze" means "a light gentle wind" which suggests a thing is "easily done." A screenshot of the Merriam-Webster definition of "breeze" from https://www.merriam-webster.com/dictionary/breeze is attached hereto as **Exhibit D** and incorporated herein by reference.

20. Breeze Smoke's BREEZE disposable vaping pens sell to consumers for approximately $11 to $20 each.

21. It is my understanding and experience that consumers of disposable vaping pens do not exhibit a high degree of care when purchasing such products because they are not particularly expensive.

22. Breeze Smoke has generated substantial revenue from the sale of goods and services under its BREEZE Marks. To date, Breeze Smoke has generated

millions of dollars in revenue from the sale of its BREEZE-branded disposable vaping pens.

23. As a result of Breeze Smoke's continuous use, extensive sales, advertising, and promotion, the BREEZE Marks enjoy widespread recognition and an excellent reputation, and are recognized by the public as emanating exclusively from Breeze Smoke and emblematic of its high quality products and services.

24. True and accurate screenshots from various websites showing overwhelming positive reviews of the BREEZE disposable vaping pens are attached hereto as **Exhibit E** and incorporated by reference herein.

25. The overwhelming majority of consumers of BREEZE disposable vaping pens are satisfied with the product's performance and give the product high praise.

26. The BREEZE Marks have become intangible assets of substantial commercial value to Breeze Smoke.

27. Unfortunately, the immense success of Breeze Smoke's BREEZE brand has given rise to a number of copycats.

28. As a result, Breeze Smoke has been forced a number of times to seek immediate injunctive relief against infringers seeking to capitalize on the goodwill of its BREEZE brand. Breeze Smoke successfully obtained

temporary restraining orders and/or preliminary injunctions in those prior cases. *See* February 8, 2021 Order, Case No. 5:20-cv-12944-JEL-EAS (E.D. Mich.) (Levy, J.), attached hereto as **Exhibit F**; February 23, 2021 Order, Case No. 2:20-cv-13413-AJT-EAS (E.D. Mich.) (Tarnow, J.), attached hereto as **Exhibit G**.

29. In August 2022, I became aware of a possible new product sold under the mark "BREEZY" from a sales representative located in Alabama. I asked for more information, but did not receive further substantiation.

30. Then, in late October 2022, I learned that several retailers, wholesalers, and distributers in Michigan and elsewhere in the United States were selling disposable electronic cigarettes using Breeze Smoke's BREEZE Marks (the "Infringing Products").

31. Those retailers, wholesalers, and distributers are the Defendants.

32. Based on my experience in the industry, I believe Defendants chose to sell the Infringing Products in an attempt to capitalize on the success and consumer recognition of the BREEZE Marks.

33. Below is a true and accurate picture of the Infringing Products.




34. True and accurate screenshots showing examples of Defendants' marketing, promotion and offer of the Infringing Products are attached hereto as **Exhibit H** and incorporated by reference herein.

35. In October 2022, Breeze Smoke, though counsel, sent the Defendants letters notifying them of their infringing use of the BREEZE Marks. These letters are attached hereto as **Exhibit I** and incorporated by reference herein.

36. The letters also demanded that Defendants' cease and desist from marketing, promoting, advertising, offering, distributing and selling products using the BREEZE Marks.

37. To my knowledge, not a single Defendant has ceased selling the Infringing Products.

14

38. Only one Defendant responded to the Cease and Desist letters and it unapologetically asserted that it would continue to sell the Infringing Products. This letter is attached hereto as **Exhibit J** and incorporated by reference herein.

39. BREEZE products are only sold by two authorized BREEZE distributors and their authorized sub-distributors.

40. Defendants are retailers, distributers, and small wholesalers that have familiarity with the vaping industry and prices of vaping products. They knew that the Infringing Products would cause consumer confusion and they intended to trade off of the goodwill Breeze Smoke has built up in the BREEZE Marks. Further, all Defendants currently sell Breeze Smoke's BREEZE Goods and Services in addition to the Infringing Products, compounding the potential for confusion.

41. Breeze Smoke's BREEZE Goods and Services undergo rigorous quality control measures, including but not limited to Breeze Smoke's high standards for manufacturing, production, and product testing.

42. Defendants' Infringing Products have not undergone Breeze Smoke's quality control processing and therefore I cannot vouch for the safety or quality of Defendants' Infringing Products.

43. In my experience, vaping products that do not undergo rigorous testing and quality control procedures such as those Breeze Smoke has in place can pose substantial safety risks for consumers.

44. Based on my experience in the vaping industry and marketplace and conversations with customers, I believe that consumers are highly likely to be confused, and already are confused, between Breeze Smoke's BREEZE Products and Defendants' Infringing Products.

45. I have received correspondence from several retailers, distributers, and wholesalers asking if the Infringing Products are genuine Breeze Goods and Services. Examples of such communications are attached as **Exhibit K** and incorporated herein by reference.

46. I have received correspondence from several retailers, distributers, and wholesalers saying that customers are asking about the Infringing Products and whether they can get them from Breeze Smoke. Examples of such communications are attached as **Exhibit L** and incorporated herein by reference.

47. I have personal knowledge of at least one customer posting on social media asking if the Infringing Products are affiliated with Breeze Smoke. A screen shot of this post is attached as **Exhibit M** and incorporated herein by reference.

48. Customers also have messaged Breeze Smoke customer service thinking that Breeze Smoke made the Infringing Products and complained about the inferior quality of the Infringing Products because they did not taste as advertised. Examples of such messages are attached at **Exhibit N** and incorporated herein by reference.

49. One customer messaged Breeze Smoke customer service asking if Breeze Smoke made the Infringing Products because he bought one after three days "it started blowing its juice out and got really hot." *See* **Exhibit N.**

50. Defendants are directly competing with Breeze Smoke's distributors, ultimately depriving Breeze Smoke of sales of its products, by selling nearly identical vaping products to the same or similar classes of customers as Breeze Smoke.

51. Defendants' Infringing Products are in no way affiliated with Breeze Smoke but yet display the BREEZE Marks.

52. Breeze Smoke has not licensed or otherwise authorized Defendants to use its highly valuable and well-established BREEZE Marks in any manner whatsoever.

53. Breeze Smoke has invested substantially in its BREEZE brand, intends to continue developing its BREEZE brand and selling its BREEZE Goods and Services, and also expects to expand its business by making new products in

the vaping space, including disposable vaping products, to stay ahead of the competition.

54. Defendants knew of Breeze Smoke's prior use of the BREEZE Marks, were and are well aware of the goodwill and market value associated with them, and intentionally chose to use the BREEZE Marks by selling the Infringing Products, which they knew or should have known would falsely suggest an affiliation between Breeze Smoke and its goods and services on the one hand, and Defendants' Infringing Products on the other, or to confuse customers about the source of the parties' respective goods.

55. As of the date of this Declaration, Defendants are still offering and selling their Infringing Products using Breeze Smoke's BREEZE Marks.

56. Defendants' unauthorized use of the BREEZE Marks in connection with their Infringing Products is already causing substantial confusion in the marketplace.

57. Because of this customer confusion, Breeze Smoke's customer goodwill has been substantially and irreparably harmed.  Breeze Smoke stands not only to continue losing its customer goodwill but also a substantial amount of its business if Defendants continue to infringe its BREEZE Trademarks.

58. The damage to Breeze Smoke from Defendants' unlawful actions cannot be quantified and cannot be fully compensated by money alone.

All statements made herein of my own knowledge are true, and all statements made on information and belief are believed to be true. I declare under penalty of perjury that the foregoing is true and correct.

Dated: November 22, 2022        By: _____

Steven Haddad
Breeze Smoke LLC